IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHRISTOPHER CROOM, #R23966,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 21-cv-896-SMY |
| ) | |
| **JOSHUA SCHOENBECK,** ) | |
| **SANDY WALKER, MELINDA SEVERS,** ) | |
| **and TERRANCE JACKSON,** ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Christopher Croom, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983. He alleges Defendants denied him due process protections in connection with his prison disciplinary proceedings, in violation of the Fourteenth Amendment. Now pending before the Court is Defendants' Motion for Summary Judgment (Doc. 64). Croom has responded in opposition (Doc. 69). For the following reasons, the motion is **GRANTED**.

## Factual Background

Construed in the light most favorable to Croom, the evidence and reasonable inferences establish the following facts relevant to the pending motions: At all relevant times, Croom was incarcerated at Menard Correctional Center (Doc. 65-1, at p. 8). He was placed on investigative status on December 3, 2020, as a result of mail he received from an individual named Felicia McColez. *Id*. at pp. 11-12; Doc. 65-2. On December 31, 2020, Croom received a disciplinary ticket for "504 A: 601/203 – Conspiracy to Drugs and Drug Paraphernalia; 501 – Violating State or Federal Law (21 USC 801-849 – The Controlled Substances Act, and 18 USC 1716 – Injurious

articles as non-mailable," regarding the receipt of mail from McColez, which yielded a positive result for synthetic cannabinoids (Doc. 65-1, pp. 14-15; Doc. 65-2).

After receiving the disciplinary ticket, Croom attempted to mail a letter to the Adjustment Committee requesting that all emails from November 2020 to and from McColez be present at the hearing (Doc. 65-1, pp. 16-17). Croom also requested that the "initial statement made to Officer Huffman on December 3, 2020 that [he] signed" be present at the hearing. *Id*. at pp. 34-35. Croom detached the bottom portion of his disciplinary ticket to request that IA Officer Huffman be present as a witness at the hearing. *Id*. at pp. 16-17. He did not request any additional witnesses. *Id*. Croom placed the letter and detached portion of the disciplinary ticket in a blank envelope, addressed the envelope to the Adjustment Committee, and placed the envelope in his cell door to be given to the Adjustment Committee. *Id*. at pp. 35-36. Croom does not know whether the Adjustment Committee received his envelope prior to the hearing on his disciplinary ticket. *Id*.

The Adjustment Committee held a hearing on Croom's disciplinary ticket on January 5, 2021 (Doc. 65-1, p. 20; Doc. 65-2). Defendants Joshua Schoenbeck and Terrance Jackson served on the Adjustment Committee and were responsible for recommending Croom's disciplinary action (Doc. 65-2, pp. 2-4). Croom believed Schoenbeck was impartial because he previously worked in the Internal Affairs Department (Doc. 65-1, p. 29). Defendant Sandy Walker was present at the hearing and served in an administrative capacity by reviewing disciplinary tickets, ensuring that the disciplinary tickets complied with DR 504, and ensuring that the proceedings remained organized for everyone in custody (Doc. 65-3, p. 2). Defendant Melinda Severs was a hearing investigator for the Adjustment Committee (Doc. 65-4, p. 1). She reviewed Croom's disciplinary ticket for accuracy, but was not responsible for investigating the underlying claims of the ticket. *Id.*

During the hearing, Croom asked the Adjustment Committee if his requests were received. He was told that that they did not receive his requests (Doc. 65-1, pp. 20-21). There was no documentation in the record of proceedings indicating the Adjustment Committee ever received Croom's letter (Doc. 65-5, Doc. 65-2, pp. 4-6). Croom pled not guilty and testified that he did not request the letter or any drugs and assumed McColez was sending something sexual in nature (Doc. 65-1, pp. 23-24). He admitted to communicating with McColez, but testified that he never requested drugs from her. *Id*. at pp. 23-24; Doc. 65-2, p. 4.

Croom received a written copy of the Adjustment Committee's decision on January 22, 2021 (Doc. 65-1, pp. 22-24; Doc. 65-2, pp. 4-6). He was found guilty and received three months in segregation, three months commissary restriction, and six months contact visits restriction. *Id.*

During his deposition, Croom testified that he was assaulted by unknown staff members and peppered sprayed twice while housed in segregation. *Id*. at pp. 27-28. He also testified that while in segregation, he was confined to a cell, could only go to recreation twice a week, had no tablet or television, was unable to purchase commissary food, and had no cleaning supplies (Doc. 65-1, pp. 26-27).

## Discussion

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue as to any material fact – that is where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). If the evidence is merely colorable or is not sufficiently probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986). Any doubt as to the existence of a genuine

issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkerson v Austin*, 545 U.S. 209, 221 (2005). Therefore, before considering whether Croom was afforded procedural due process prior to his placement in segregation, the Court must first consider whether he had a liberty interest at stake.

An inmate's liberty interest in avoiding segregation is limited. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). A prisoner must demonstrate that his confinement imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). In assessing whether disciplinary segregation amounts to a constitutional violation, courts look to "the combined import of the duration of the segregative confinement *and* the conditions endured." *Marion,* 559 F.3d at 697 (emphasis in original).

Relatively short terms of segregation rarely give rise to a prisoner's liberty interest in the absence of exceptionally harsh conditions. *Id.* And the exposure to unsavory conditions worse than those experienced in general population housing generally will not implicate a liberty interest. *See Hardaway*, 734 F.3d at 744 (holding that more than six months in segregation with confrontational cellmate behind solid metal door and with mere weekly shower and yard access was insufficient). Examples of exceptionally harsh conditions include deprivation of "all human contact or sensory stimuli" which can cause adverse psychological effects. *Id.* Here, Defendants argue that Croom's three months in segregation and the conditions he claimed he was exposed to do not trigger liberty interests. The Court agrees.

Based on the record, no reasonable jury could conclude that Croom was deprived of a liberty interest. Croom maintains that during his three months in segregation, he had no in-person visits, was confined to his cell, could only got to recreation twice a week, had no access to his tablet or television, was prevented from buying commissary food, and was not provided cleaning supplies. Even in combination, these conditions are insufficient to create protected liberty interest. *See McCoy v. Atherton*, 818 F. App'x 538, 541 (7th Cir. 2020) (holding that inmate living in a dirty cell near physically and mentally ill inmates for three months was not so atypical and significantly harsh as to implicate a liberty interest); *Stallings v. Best,* No. 16 C 11063, 2018 WL 4300488, at *6 (N.D. Ill. Sept. 10, 2018), *aff'd,* 777 F. App'x 831 (7th Cir. 2019) (collecting cases).

Croom also contends that he was assaulted by staff members and pepper sprayed two times for no reason while housed in segregation. These allegations are not directed at the defendants herein, and the record is devoid of any evidence of personal involvement by them with respect to Croom's assault allegations. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (liability for an individual-capacity claim under § 1983 hinges on a defendant's personal involvement in the deprivation of a constitutional right).

Because no reasonable factfinder could find that Croom's time in segregation implicated a constitutionally protected liberty interest, the Court need not consider whether the procedures followed during his Adjustment Committee hearing were deficient. Defendants are entitled to summary judgment.

**Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 64) is **GRANTED**. As no claims remain, the Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

DATED: May 3, 2024

**STACI M. YANDLE**
**United States District Judge**